

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| DUININCK BROTHERS, INC. and AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, INC., Plaintiffs, | § § § § § § | |
| v. | § § | Case No. 4:06-cv-441 |
| HOWE PRECAST, INC. d/b/a HOWE PRECAST and EMPLOYERS MUTUAL CASUALTY COMPANY, Defendants. | § § § § § | |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT & DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

The following are pending before the court:

1. Defendant Employers Mutual Casualty Company's Motion for Partial Summary Judgment and Brief in Support on the Issue of Contractual Indemnity (de # 46);

2. Plaintiffs' Response and Brief in Opposition to Defendant Employers Mutual Casualty Company's Motion for Partial Summary Judgment on the Issue of Contractual Indemnity (de # 48);

3. Employers Mutual Casualty Company's Reply in Support of Motion for Partial Summary Judgment (de # 49);

4. Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on Issues of Additional Insured and Contractual Indemnity Coverage (de # 52);

5. Defendant Employers Mutual Casualty Company's Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on the Issues of Additional Insured and Contractual Indemnity Coverage (de # 58);

6. Defendant Howe Precast's Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on the Issues of Additional Insured and Contractual

> Indemnity Coverage (de # 60);

7. Plaintiffs' Reply to Defendant Employers Mutual Casualty Company's Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on Issues of Additional Insured and Contractual Indemnity Coverage (de # 61);

8. Plaintiffs' Reply to Defendant Howe Precast's Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on the Issues of Additional Insured and Contractual Indemnity Coverage (de # 62);

9. Plaintiffs' Supplemental Reply to Employers Mutual Casualty's Response to Plaintiffs' Motion for Partial Summary Judgment and Brief in Support on Issue of Additional Insured Coverage (de # 121);

10. Defendant Employers Mutual Casualty Company's Cross-Motion for Summary Judgment on the Issue of Additional Insured Coverage (de # 138); and

11. Plaintiffs' Response to Employers Mutual Casualty's Cross-Motion for Summary Judgment on the Issue of Additional Insured Coverage (de # 139).

Having considered the Motions, the briefing responsive thereto and the applicable law, the court is of the opinion that the Plaintiffs' Motion should be GRANTED and that the Defendant's Motions should be DENIED.

## I. BACKGROUND

This matter requires the court to consider the viability under Texas law of an indemnity provision contained in a contract between Duininck Brothers, Incorporated ("Duininck") and Howe Precast, Incorporated ("Howe"). Because the court finds that the indemnity provision at issue is enforceable, the next issue is whether Howe's commercial general liability insurance policy with Employers Mutual Casualty Company ("EMCC") covers the liability created by the indemnity provision for Howe. The court finds that the policy does cover that liability and, therefore, grants the Plaintiffs' Motion and denies EMCC's Motion.

Duininck was the general contractor hired by the State of Texas on a highway construction

project in Grayson County. (Pls.' Mot. for Summ. J. ¶ 4a.) In February of 2002, Duininck entered into a subcontract with Howe pursuant to which Howe would "furnish, install, move, reset, side shift, relocate and remove portable concrete barriers" in connection with the construction project. (*Id*. at ¶ 4b.) Article 5 of the subcontract contained a lengthy indemnity agreement, the text of which is reproduced in Part III, *infra*. (*Id*. at ¶ 4c.) The subcontract also obligated Howe to obtain a commercial general liability insurance policy and name Duininck and the State of Texas as additional insureds. (*Id*. at ¶ 4d.) The insurance policy, furnished by EMCC, was effective from January 26, 2003 through January 26, 2004, and Duininck and the State of Texas were added to the policy through an endorsement. (*Id*. at ¶ 4e.)

In the summer of 2003, while the concrete barriers were in place, the highway construction zone proved to be a precarious territory. In June, a number of accidents occurred in the area as a result of standing water on the freeway. (*Id*. at ¶ 4g.) The water caused drivers to lose control of their vehicles and collide with either other cars or the concrete barriers. (*Id*.) Four separate lawsuits naming Howe, Duininck and others as defendants arose out of the collisions. (Def.'s Mot. for Summ. J. ¶ 3.) Only the expenses incurred in the defense of two of the lawsuits are at issue in this dispute. (Pls.' Mot. ¶ 4h.)

In those lawsuits, the state court plaintiffs made virtually identical allegations accusing Duininck of negligence in, among other things, the design and placement of the concrete barriers, creating an unreasonably unsafe roadway. (*Id*. at ¶ VI. of Ex. G.; ¶ V. of Ex. H.) The state court plaintiffs alleged the same misconduct of Howe. (*Id*. at ¶ X. of Ex. G.; ¶ IX. of Ex. H.) The state court plaintiffs alleged that the placement of the concrete barriers allowed water to accumulate on the roadway and that the state court defendants failed to properly warn motorists of the dangers of

driving in the construction zone. (*Id*. at ¶¶ 4h-4i.)

On February 16, 2005, counsel for Duininck sent letters to Howe apprising Howe of the state court lawsuits and demanding that Howe fund the defense of those lawsuits and indemnify the State of Texas and Duininck against any judgment in favor of the state court plaintiffs. (*Id*. at Ex. I.) Howe declined to provide the defense in the underlying lawsuits. Duininck went forward with its defense, incurring costs of $460,202.54 in attorney fees and expenses and $63,200 to settle the claims. (EMCC's Resp. to Pls.' Mot. 4.) The first $500,000 of those expenses were paid by Duininck, and Duininck's insurer, American Contractors Insurance Company ("ACIC") paid for the remainder. (Pls.' Reply to EMCC's Resp. to Pls.' Mot. ¶ 2.)

Duininck and ACIC brought this lawsuit against Howe and EMCC in the 211th District Court of Denton County, Texas seeking reimbursement under either EMCC's duty to defend under the insurance policy or Howe's duty to indemnify under the subcontract. EMCC then removed the case to this court on the basis of the parties' diverse citizenship.

## II. LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey*

*Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *See id*. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id*. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News*, *Inc*., 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

### III. DISCUSSION AND ANALYSIS

Texas courts impose a "fair notice" requirement on contractual indemnity agreements purporting to shift liability for a party's own negligence to another party. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). In order to comply with the fair notice standard, the provision must meet the express negligence test and be conspicuous. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). The parties do not contest the conspicuousness of the indemnity provision.

The Texas courts have abandoned the "clear and unequivocal test" in favor of the more stringent express negligence test. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708, (Tex.

1987). For a party to pass on the exposure for its own negligence to another party, the agreement embodying that intent must do so expressly. *Id*.; *see XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 149 (5th Cir. 2008). The parties' intent must be unequivocally reflected in the four corners of the document containing the indemnity agreement. *Ethyl*, 725 S.W.2d at 708; *English v. BGP Int'l, Inc.*, 174 S.W.3d 366, 374 (Tex.App.—Houston [14 Dist.] 2005, no pet.). "Another formulation of the rule is that the provision must 'mention' the claim to be released." *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 333 (Tex. App.—Houston [14 Dist.] 2006, no pet.) (citing *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991)). The express negligence doctrine is designed to "cut through the ambiguity" of indemnity provisions and reduce the number of suits related to the interpretation of such clauses. *Ethyl*, 725 S.W.2d at 708.

Thus, provisions that "explicitly and affirmatively" state the parties' intent to have an indemnitor indemnify an indemnitee for the indemnitee's own negligence typically have been enforced. *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 463 (5th Cir. 2002). In contrast, broad statements that purport to indemnify a party for losses or claims arising from certain types of activity do not comply with the express negligence test. *Id*. at 462. Stated succinctly, if the purported indemnity agreement requires any "inference or extension" in order to impose an indemnity obligation on the supposed indemnitor, then that agreement is invalid. *Id*. at 463. Whether a contractual indemnity provision satisfies the express negligence test is a question of law. *Id*. at 459.

The portion of the subcontract titled "Indemnification" provides as follows

> INDEMNIFICATION    SUBCONTRACTOR AGREES TO ASSUME THE ENTIRE RESPONSIBILITY AND LIABILITY FOR ALL DAMAGES, INCLUDING BUT NOT LIMITED TO ATTORNEYS FEES AND EXPENSES, OR INJURY TO ALL PERSONS, WHETHER EMPLOYEES

OR OTHERWISE, AND TO ALL PROPERTY, ARISING OUT OF OR RESULTING FROM THE EXECUTION OF THE WORK PROVIDED FOR IN THIS SUBCONTRACT BY THE SUBCONTRACTOR, OR ANYONE DIRECTLY OR INDIRECTLY EMPLOYED BY THEM OR ANYONE FOR WHOSE ACTS THEY MAY BE LIABLE, OR OCCURRING OR RESULTING FROM THE USE BY THE SUBCONTRACTOR ITS AGENTS OR EMPLOYEES, OF MATERIALS, EQUIPMENT, TOOLS OR OTHER PROPERTY, WHETHER THE SAME BE OWNED BY CONTRACTOR, SUBCONTRACTOR OR THIRD PARTIES, REGARDLESS OF WHETHER OR NOT SUCH DAMAGE OR INJURY IS CAUSED, OR IS ALLEGED TO BE CAUSED, IN WHOLE OR IN PART BY THE NEGLIGENT SUPERVISION, ACTS OR OMISSIONS OF CONTRACTOR, *FOR WORK TO BE PERFORMED UNDER THIS SUBCONTRACT*; AND SUBCONTRACTOR AGREES TO INDEMNIFY AND SAVE HARMLESS OWNER, ITS ARCHITECTS AND/OR ENGINEERS, CONTRACTOR, ITS SUBSIDIARIES, THEIR OFFICERS, AGENTS AND EMPLOYEES FROM ALL SUCH CLAIMS FOR WHICH SUBCONTRACTOR IS SO RESPONSIBLE INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, CLAIMS FOR WHICH THE CONTRACTOR MAY BE CLAIMED TO BE LIABLE AND LEGAL FEES AND DISBURSEMENTS PAID OR INCURRED TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, *FOR WORK TO BE PERFORMED UNDER THIS SUBCONTRACT.* IT IS THE EXPRESS INTENTION OF BOTH SUBCONTRACTOR AND CONTRACTOR THAT SUBCONTRACTOR IS TO DEFEND, INDEMNIFY AND PROTECT CONTRACTOR FROM THE CONSEQUENCES OF CONTRACTOR'S OWN NEGLIGENT SUPERVISION, ACTS OR OMISSIONS, IF SUCH NEGLIGENCE IS A CONCURRING CAUSE OR IS ALLEGED TO BE A CONCURRING CAUSE OF THE CLAIM, LOSS, CAUSE OF ACTION, DAMAGE OR INJURY, *FOR WORK TO BE PERFORMED UNDER THIS SUBCONTRACT.* IT IS EXPRESSLY UNDERSTOOD THAT THE PROVISIONS OF THIS ARTICLE ARE AN [sic] ADDITION TO AND NOT LIMITED BY AND [sic] PROVISIONS PROVIDED ELSEWHERE.

(de # 48 Ex. C.). EMCC argues that the provision is inadequate because it is "general, garbled and...incomprehensible." (de # 46 at 9.) The Plaintiffs' position, of course, is that the agreement explicitly defines the Defendants' indemnity obligations and that those obligations were triggered in the underlying cases. (de # 52 at ¶ 30.) The court is in agreement with the Plaintiffs.

The Indemnity Article is broken down into four separate statements. The first statement is that part of the first sentence that appears before the semicolon. That statement obligates Howe to assume the liability for personal injury resulting from work performed under the subcontract, whether or not that liability arises in whole or in part from the negligence of Duininck. The statement following the semicolon obligates Howe to indemnify the State of Texas and Duininck

from personal injury claims for which Howe is responsible for services rendered under the subcontract.

The third statement is the key to resolution of this lawsuit because it is the indemnity provision. It is this statement that obligates Howe to indemnify Duininck. This statement clearly and unequivocally establishes the indemnity obligation of Howe. It states that the parties agree that Howe will indemnify Duininck for Duininck's own negligence arising out of work performed under the subcontract that is, in fact or allegedly, a concurring cause of "*the* claim, loss, cause of action, damage or injury." (emphasis added). The article 'the' that precedes "claim, loss, cause of action, damage or injury" is a clear and unambiguous reference to the first sentence which lets the reader know that the subcontractor is assuming the liability for personal injury claims arising out of the services performed under the subcontract. Thus, the proper, and only permissible, understanding of the third statement is that Howe and Duininck explicitly agreed that Duininck will be indemnified for its own negligence arising out of the subcontract that leads to alleged or actual liability for personal injuries. No "inference or extension" is required to arrive at this meaning; a straightforward reading is sufficient. *Quorum*, 308 F.3d at 463. The fourth statement merely states that the Indemnity Article does not limit other portions of the subcontract, and it is immaterial for the court's purposes.

EMCC makes much of the length of the first sentence and the fact that it does not require Howe to indemnify Duininck for Duininck's own negligence. One might argue that the first sentence belongs in its own part of the subcontract, perhaps in an Assumption of Liability Article. But its inclusion in the Indemnity Article adjacent to the indemnity provision does not affect the enforceability of the indemnity provision. *See Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex.

1990). Moreover, the fact that the indemnity provision itself refers back to the first sentence is not fatal. *Id*. Nothing in the cases indicates a brevity requirement to enforce an indemnity agreement. Indeed, the Indemnity Article is likely as thorough as it is to eliminate possible loopholes through which indemnitors might seek to avoid their obligations.

EMCC also argues that the intermittent use of the phrase "for work to be performed under this Subcontract" is confusing and that it creates ambiguity. However, that phrase simply limits the scope of the Indemnity Article. It has the effect of limiting the exposure Howe could theoretically face as a result of Duininck's negligence. Without that narrowing phrase, the parties could potentially find themselves in court arguing over whether Howe was required to assume liability or guarantee indemnity for liability arising from actions that have nothing to do with moving or placing concrete barriers.

Having determined that Howe was contractually obligated to indemnify Duininck for Duininck's negligence in connection with the subcontract, the court must now decide whether Howe insured its indemnification liability through EMCC. In accordance with its obligation under the subcontract, Howe did procure insurance covering liabilities arising out of the subcontract, and that insurance policy was through EMCC. That policy offers the following exclusion:

> **2. Exclusions**
> This insurance policy does not apply to:
> ...
> **b. Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> **(1)** That the insured would have in the absence of the contract or agreement; or
> **(2)** Assumed in a contract or agreement that is an "insured

contract", [sic] provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

An "insured contract" is defined, in relevant part, as:

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
Paragraph **f.** does not include that part of any contract or agreement:
...
    (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
        (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
        (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or
    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services including those listed in (2) above and supervisory, inspection or engineering activities.

(de # 52 at Ex. C.)

Based on the circumstances of this dispute, the subcontract is quite clearly an "insured contract," obligating EMCC to indemnify Duininck on behalf of Howe. The subcontract was

executed on February 22, 2002. (de # 52 at ¶ 4a.) Howe later obtained the policy at issue which remained in effect from January 26, 2003 through January 26, 2004. (*Id*. at ¶ 4e.) Duininck was added to the policy as an additional insured. (de # 61 at Ex. A; de # 52 at Ex. E.) The incidents leading to the underlying personal injury lawsuits occurred in June of 2003, after Howe had installed the concrete barriers. (de # 52 ¶ 4g.) Those lawsuits alleged negligence on the part of Duininck in connection with dangerous road conditions created by the placement of the concrete barriers. (*Id*. at ¶ 4i.) Duininck and ACIC defended the underlying lawsuits, eventually settling them. (*Id*. at ¶ 4k.)

A simple reading of the policy requires a finding that the Exclusions do not apply to the expenses incurred in the underlying lawsuits. The subcontract is an "insured contract" because it is an agreement pertaining to Howe's business under which Howe undertook another party's tort liability to a third party. The limitations on the definition of "insured contract" are inapplicable here.

Moving back to the Exclusions portion of the policy, the liability for bodily injury obviously accrued after the policy was enacted. The subcontract was an agreement creating liability for Howe for bodily injury and property damage (subparagraph a.), and the attorneys fees incurred in the underlying lawsuits in a civil proceeding alleging damages covered by the insurance policy (subparagraph b.). The insurance policy issued to Howe by EMCC covers the expenses incurred in the underlying lawsuits, obligating EMCC to indemnify Duininck and ACIC.

Alternatively, the EMCC policy obligated EMCC to defend Duininck as an additional insured. The additional insured endorsement named Duininck as an insured "with respect to liability arising out of [Howe's] ongoing operations performed for that additional insured." (Pl.'s Mot. at Ex. E.) EMCC argues that the auto collisions did not occur during Howe's ongoing operations because

they occurred after the concrete barriers had been set in place. EMCC relies on two cases: *MACTEC Eng'g & Consulting, Inc. v. OneBeacon Ins. Co.*, Civil No. 06-cv-466-JD, 2007 U.S. Dist. LEXIS 58374 (D. N.H. Aug. 8, 2007) and *Weitz Co., LLC v. MidCentury Ins. Co.*, 181 P.3d 309 (Colo. Ct. App. 2007).

MACTEC was a general contractor that sought indemnity from its subcontractor's insurer under an insurance contract in which MACTEC was named an additional insured. *MACTEC*, 2007 U.S. Dist. LEXIS at *4. Like the insurance policy at issue in this case, the additional insured in *MACTEC* was only insured for liability arising out of the subcontractor's "ongoing operations" performed in conjunction with the subcontract. *Id*. at *9. There, however, the subcontractor had completed *all* of its obligations under the subcontract before liability related to its performance thereof had arisen. *Id*. at *10. Accordingly, the court concluded that the subcontractor's operations were no longer ongoing and that MACTEC was no longer protected by the additional insured endorsement. *Id*. at *10-11. *Weitz Co.* addresses a virtually identical situation. There, the court concluded that liability arose after the subcontractor had discharged all of its duties under the contract. Thus, the additional insured endorsement was inapplicable because it only covered "ongoing operations" as opposed to also covering "completed operations." *Weitz Co.*, 181 P.3d at 315. While both cases appear to have been decided soundly, neither is apposite here.

This issue is more like the one addressed in *Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co., Inc.*, 475 F. Supp. 2d 400 (S.D. N.Y. 2007). There, the court addressed the scope to be given an additional insured endorsement that, like the one at issue here, insured against liability created by the additional insured during the primary insured's "ongoing operations." *Id*. at 408. There, the plaintiff argued that "'ongoing relations' only exist when some 'action' is being taken by" the party.

*Id*. at 409. The court declined to read "ongoing operations" so narrowly, noting that such a construction would mean that coverage would start and stop depending on whether the contractor's employees were on the job site performing chores for the contractor. *Id*. 410. Similarly, this court interprets Howe's "ongoing operations," as set forth in the "Additional Insured" endorsement in the policy issued by EMCC to Howe, to include actions taken by Howe under the subcontract during the pendency of its performance of obligations thereunder and to cover liability created as a result of such actions. *See id*. at 411; *see also Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 Fed. Appx. 148, 150 (2d Cir. 2006) (finding that the contractor's operations were ongoing so long as it had not completed its duties under the contract). Not only is this construction the most natural, it, more importantly, is in line with the policy of the State of Texas to construe contractual ambiguities in favor of the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

Under this interpretation of the additional insured endorsement, the court finds that the auto accidents occurred during the course of Howe's ongoing operations. While the accidents did not occur while Howe employees were on the construction site maneuvering concrete barriers, they clearly occurred while Howe was still under its contractual obligation to perform services in connection with the construction project in Grayson County. The subcontract required Howe to "furnish, install, move, reset, side shift, relocate and remove portable concrete barriers." Once Howe began installing the concrete barriers, and until they were removed from the construction site, Howe's operations were ongoing. And Duininck was covered under the additional insured endorsement under the EMCC insurance policy for liability arising out of Howe's work. The accidents having occurred prior to Howe's completion of operations, EMCC was obligated to insure

any losses connected thereto and incurred by Duininck.

The court will discuss the remaining arguments posed by the Defendants. They first argue that Texas law prevents the Plaintiffs from recovering funds from EMCC because of its status as a co-insurer. EMCC cites *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007) for the proposition that a co-insurer is not obligated to reimburse another co-insurer for expenses spent on behalf of an insured.

*Mid-Continent* came to the Texas Supreme Court on questions certified from the Fifth Circuit Court of Appeals. *Id*. at 768. That case involved an underlying negligence lawsuit against a contractor and a subcontractor stemming from an auto accident in a road construction zone. *Id*. at 768-69. As the underlying lawsuit progressed, the insurers' estimates as to the value of the case against the contractor became widely divergent. *Id*. at 770. Liberty Mutual, the contractor's insurer eventually negotiated a settlement with the underlying plaintiffs of $1.5 million. *Id*. Mid-Continent valued the case against the contractor at $300,000, and it offered and paid half of that amount, leaving Liberty Mutual to pay $1.35 million to the underlying plaintiffs. *Id*. Liberty Mutual sued Mid-Continent for the remainder of half of the settlement payment, or $600,000.

The insurance policies in that case both contained pro rata clauses, limiting each insurer's exposure to the lesser of the limit of the policy it issued or the proportion of the settlement equal to the limit of the policy it issued over the total amount of insurance available to cover liability incurred by the insureds. *Id*. at 772. The court held that the presence of pro rata clauses precluded a right of contribution against a co-insurer "because the clause makes the contracts several and independent of each other." *Id*. The court also held that a fully-indemnified insured has no rights against a non-paying co-insurer to which a paying co-insurer can be subrogated. *Id*. at 775-76.

*Mid-Continent* is a narrow case, and, even assuming that EMCC and ACIC were co-insurers in the underlying lawsuits, it is inapplicable to the facts of this case. *Id*. at 777 (opinion of Willett, J., concurring); *Am. Home Assur. Co. v. Liberty Mut. Ins. Co.*, No. 02-3842, 2008 U.S. Dist. LEXIS 10281, at *6 n.4 (E.D. La. Feb. 12, 2008). First, *Mid-Continent* deals with a scenario wherein two insurers have undertaken an obligation to assume the liability for losses incurred by an insured. The insurer that pays more than its "independent contractual obligation" does so voluntarily, foreclosing any right of contribution against the underpaying insurer. *Mid-Continent*, 236 S.W.3d at 772. In this case, only one insurer, EMCC by virtue of the binding indemnity clause in the subcontract, was obligated to fund the liability in the underlying lawsuit. Thus, unlike Liberty Mutual, ACIC was under no contractual obligation to pay for the underlying lawsuits in this case. Also, because Duininck has not been fully indemnified, *id*. at 776, and because Duininck possesses a contractual right to indemnity against EMCC, both Duininck and ACIC have a right of reimbursement against EMCC.

The Defendants next argue that there was no duty to defend Duininck against the underlying lawsuits, necessarily proscribing any duty to indemnify. The duty to defend is separate and apart from the duty to indemnify. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006). The duty to defend is triggered by the mere possibility that a lawsuit against an insured may give rise to a type of liability covered by the insurance policy. *Id*. But "the facts actually established in the underlying suit" bring about the duty to indemnify. *Id*.

By settling with the underlying plaintiffs, Duininck acknowledged fault for the facts alleged against it in the underlying lawsuits. The underlying plaintiffs sued on claims of negligence against Duininck and others. As discussed above, the subcontract plainly required Howe to indemnify

Duininck for its own acts of negligence connected to the work covered by the subcontract. Howe passed that risk along to EMCC because the subcontract constituted an insured contract under the insurance policy. Thus, the facts established in the underlying lawsuit ignited the contractual duty to indemnify, obligating EMCC to pay those expenses incurred in the defense and settlement of the underlying lawsuits.

The Defendants' argument that the question of duty to defend necessarily precedes the question of duty to indemnify is immaterial here. The facts established in the underlying lawsuits triggered the narrower duty to indemnify. *United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497 F.3d 445, 448 (5th Cir. 2007). Therefore, the Defendants' argument that the underlying events failed to trigger the Additional Insured coverage in the insurance policy is a red herring. And because the indemnity agreement covers liability, litigation expenses and attorneys fees, the duty to defend inquiry would be duplicative of the already-decided duty to indemnify inquiry. It, therefore, need not be reached.

## IV. CONCLUSION

Based on the foregoing, the court finds that Howe obligated itself to indemnify Duininck Brothers for its negligence in connection with the work performed under the subcontract. The court finds further that the subcontract is an "insured contract" within the meaning of that term provided in the insurance policy, obligating Employers Mutual to insure Howe Precast for liability incurred in the performance of the subcontract. Additionally, and alternatively, the court finds that Duininck Brothers was an additional insured under the Employers Mutual insurance policy and that the liability created by the underlying lawsuits falls within the purview of the additional insured endorsement. The court is, therefore, of the opinion that Employers Mutual Casualty Company's Motion for Partial Summary Judgment (de # 46) should be, and hereby is, DENIED. The court is

also of the opinion that Employers Mutual Casualty Company's Cross-Motion for Summary Judgment on the Issue of Additional Insured Coverage (de # 138) should be, and hereby is, DENIED. The court is also of the opinion that the Plaintiffs' Motion for Partial Summary Judgment (de # 52) should be, and hereby is, GRANTED.

    IT IS SO ORDERED.

    **SIGNED this the 19th day of September, 2008.**

                                            _____
                                            RICHARD A. SCHELL
                                            UNITED STATES DISTRICT JUDGE