IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DUININCK BROTHERS, INC. and AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, INC., Plaintiffs, v. HOWE PRECAST, INC. and EMPLOYERS MUTUAL CASUALTY COMPANY, Defendants. | § § § § § § § § § § § § § | Case No. 4:06-cv-441 |

**ORDER DENYING PLAINTIFFS' MOTION TO STRIKE
CERTAIN TESTIMONY OF MARK STRADLEY**

Before the court are the "Plaintiffs' Objections and Motion to Strike Certain Testimony of Mark Stradley" (de # 118) and separate Responses filed by each Defendant (de # 134, 135). Having considered the Motion, the arguments of the parties and the applicable legal principles, the court is of the opinion that the Plaintiffs' Motion should be DENIED.

**I. BACKGROUND**

The Plaintiffs filed this lawsuit seeking reimbursement of funds expended to settle two lawsuits that were pending in state court under a purported indemnity agreement. Duininck Brothers, Inc., one of the Plaintiffs, was the general contractor on a highway construction project on behalf of the State of Texas. It hired Howe Precast, Inc., one of the Defendants, as a subcontractor to place, shift and maintain concrete barriers, as necessary, within the construction zone. One of Howe Precast's obligations under the subcontract was to name Duininck Brothers as an additional insured under its insurance policy and to indemnify Duininck Brothers for work to be performed under the subcontract.

During construction, several car accidents occurred as a result of standing water that was allowed to accumulate after rainstorms due to the placement of the concrete barriers. Four lawsuits were filed in state court (the "underlying cases"), and all were settled by Duininck Brothers. Duininck Brothers seeks reimbursement for the money it spent in settling two of the claims,[1] including attorney fees and settlement proceeds. At issue here is the Defendants' argument that many of the Plaintiffs' expenditures in settling the personal injury lawsuits were unnecessary and unreasonable. The Plaintiffs' have moved to strike portions of the expert testimony of the Defendants' attorney fees expert, Mark Stradley. The Plaintiffs argue that Stradley's conclusions are reached on the basis of unreliable methodology and should thus be rejected under the Supreme Court's *Daubert* mandate.

## II. LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed district courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. *Id*. at 590-93. District courts must ensure that a proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. In order to be admissible, expert testimony must also be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The court's reliability analysis should focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595. While *Daubert* dealt with the manner in which a district court should treat expert testimony regarding scientific matters, its application extends to this court's assessment of all testimony offered

---

[1]This lawsuit concerns only the expenses incurred by Duininck Brothers in defending the suits brought by state court plaintiffs Lowery and Barnett. There is no dispute regarding the expenses incurred in defending the suits brought by state court plaintiffs Hayton and Meason.

under Rule 702, scientific or otherwise. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).

In deciding whether to admit or exclude expert testimony, district courts should consider numerous factors that bear on the reliability of the proffered testimony. *Daubert*, 509 U.S. at 594. The factors enumerated in *Daubert* include:

> -- Whether a "theory or technique . . . can be (and has been) tested";
> -- Whether it "has been subjected to peer review and publication";
> -- Whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and
> -- Whether the theory or technique enjoys "general acceptance" within a "relevant scientific community."

*Kumho Tire*, 526 U.S. at 149-50 (quoting *Daubert*, 509 U.S. at 592-94).

The *Daubert* factors are not "a definitive checklist or test." *Id*. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. This court may consider these or other factors as the situation may dictate, and it is afforded "broad latitude when it decides *how* to determine reliability." *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004) (quoting *Kumho Tire*, 526 U.S. at 141). Accordingly, the ultimate decision whether to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (internal citation omitted).

### III. DISCUSSION & ANALYSIS

Where the factfinder would be assisted by technical expertise in understanding certain evidence or in deciding facts,

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. The Defendants have offered the expert testimony of Mark Stradley, an attorney licensed in Texas, to assist the factfinder in deciding whether the legal fees charged to the Plaintiffs in the underlying cases were reasonable and necessary. In making that determination, the factfinder will need to consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006); Arthur *Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Thus, as long as Stradley's testimony would help the factfinder understand the relationship and application of these factors, and as long as his testimony meets the other requirements of Rule 702, his testimony should be allowed.

It should be noted that Stradley is clearly qualified to provide expert testimony on attorney fees. According to his résumé, Stradley has been admitted to the Texas Bar since 1984. (Mot. Ex. A.) He has been certified by the Texas Board of Legal Specialization in Personal Injury and Civil Trial Law. (*Id.*) The court finds that Stradley's "knowledge, skill, experience, training, [and] education" qualify him to provide expert testimony on the reasonableness of attorney fees. FED. R. EVID. 702.

The parties devote considerably more attention to the reliability of the foundations for Stradley's conclusions. The Plaintiffs focus on several instances in Stradley's deposition where he states that some element of the legal work billed to the Plaintiffs in the underlying cases violated his own personal "rule of thumb" or that his "gut instinct" told him that an aspect of the billing was unreasonable. (Mot. Ex. B. 57:8-15; 89:13-90:6.) In addition, Stradley admits to having done no independent research into billing trends. (*Id*. at 13:3-11.) On the other hand, Stradley testified on a number of occasions that certain conclusions were reached on the basis of considering the case file he examined against the backdrop of his own experience as an attorney in the State of Texas. (*E.g.*, *id*. at 60:1-10.)

The court interprets Stradley's references to personal rules of thumb and gut instincts as perhaps a means of describing reliance on his professional experience. The court notes that much of that experience has come in cases very much like the underlying cases. (*Id*. at 50:13-20.) In addition to drawing on his personal experience, Stradley reviewed the pleadings, discovery responses and billing statements generated in the underlying cases. (*Id*. at Ex. A.) The court is also mindful of the fact that the Plaintiffs' retained expert based his conclusions (that the fees charged in the underlying cases were reasonable and necessary) on essentially the same blend of information: review of the case files and his own personal experience. (de # 135 Ex. C.) The Plaintiffs may decide that the shortcomings of Stradley's testimony highlighted in their Motion will augment their presentation to the jury, but those arguments are insufficient to strike Stradley's expert testimony altogether.

## IV. CONCLUSION

For the foregoing reasons, the court finds the expert testimony of Mark Stradley to be

admissible under Rule 702. Accordingly, the court is of the opinion that the "Plaintiffs' Objections and Motion to Strike Certain Testimony of Mark Stradley" (de # 118) should be, and hereby is, DENIED.

IT IS SO ORDERED.

**SIGNED this the 22nd day of September, 2008.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE